IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURNSTONE CONSULTING CORPORATION,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES FIDELITY AND GUARANTY COMPANY, et al.,<br><br>        Defendants.<br>_____/ | No. C 07-01216 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL APPRAISAL** |

Defendants have filed a motion to compel appraisal. Hearing on the motion is currently scheduled for May 18, 2007. Having considered the papers of the parties, the Court finds defendants' motion suitable for resolution without oral argument, and pursuant to Civil Local Rule 7-1(b), hereby VACATES the May 18, 2007 hearing. For the following reasons and for good cause shown, the Court DENIES defendants' motion to compel appraisal.

**BACKGROUND**

Plaintiff Turnstone Consulting Corporation suffered covered losses when thieves broke into its office at 330 Townsend Street in San Francisco, in February 2004. The thieves stole office equipment, including computers and other hardware containing important documents and data. Plaintiff submitted an insurance claim to defendants for loss of property, loss of "Valuable Records," and business interruption. With respect to its business interruption claim, plaintiff contended that the break-in interrupted business for approximately 8 weeks, causing a loss of over $153,000. Defendants decided that plaintiff only suffered a business interruption of two weeks, causing a loss of $25,000.

On February 1, 2007, plaintiff filed this action in San Francisco Superior Court, alleging breach of the written insurance contract, and breach of the implied covenant of good faith and fair dealing. Defendants answered plaintiff's complaint, and subsequently removed to this Court based on diversity of citizenship. Defendants now move to compel plaintiff to participate in a binding appraisal process mandated by the parties' insurance contract.[1]

## LEGAL STANDARD

"Appraisal hearings are a form of arbitration and are generally subject to the rules governing arbitration." *Kacha v. Allstate Ins. Co.*, 140 Cal. App. 4th 1023, 1031 (Cal. Ct. App. 2006). Section 4 of the Federal Arbitration Act permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *See Cohen v. Wedbush, Noble Cooke, Inc.,* 841 F.2d 282, 285 (9th Cir. 1988).

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983). In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute, but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to

---

[1]The parties' contract provides, in pertinent part:

> Appraisal. If you and we disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either you or we may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.

Calub Decl., Ex. A at 27. This provision is substantially similar to that mandated by California Insurance Code section 2071, which provides a standard appraisal provision for fire insurance policies.

arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998); *Hyundai America, Inc. v. Meissner & Wurst GMBH & Co.,* 26 F. Supp. 2d 1217, 1218-19 (N.D. Cal. 1998).

## DISCUSSION

Though appraisal is a form of arbitration, under California law, the role of insurance appraisers is much more narrow than that of arbitrators. Here, plaintiff argues that defendants seek to have the appraisers address issues that fall beyond the scope of their role. For the following reasons, the Court agrees with plaintiff and DENIES defendants' motion to compel.

"Although arbitrators are frequently, by the terms of the agreement providing for arbitration, . . . given broad powers, appraisers generally have more limited powers." *Jefferson Ins. Co. v. Superior Court*, 3 Cal. 3d 398, 403 (Cal. Sup. Ct. 1970) (citation omitted). "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." *Hughes v. Potomac Ins. Co.*, 199 Cal. App. 2d 239, 253 (Cal. Ct. App. 1962). An appraiser "only evaluates the loss and does not consider questions of policy interpretation or scope of coverage." *Figi v. New Hampshire Ins. Co.*, 108 Cal. App. 3d 772, 777 (Cal. Ct. App. 1980).

In *Safeco Insurance Co. v. Sharma*, 160 Cal. App. 3d 1060 (Cal. Ct. App. 1984), the insured lost 36 paintings in a burglary. The insured claimed that the paintings were a museum-quality "set of 36 Rajput miniature paintings, Bundi School, India, late 18th Century." *Id.* at 1062. The insurance contract at issue contained a clause providing for an appraisal panel to determine the "actual cash value and loss" where "the insured and [the insurer] shall fail to agree as to the actual cash value or the amount

3

of loss." *Id.* (quoting policy)[2]. The appraisal panel determined that the paintings were not, as the insured contended, a matched set of museum-quality paintings of the Bundi School, and determined their value to be only $18,000. *Id.* at 1063.

On appeal, the court concluded that the appraisal panel had exceeded its powers, and consequently vacated the appraisal award. *Id.* at 1066. The court found that the appraisal panel improperly addressed the "issue [of] whether the paintings respondent actually owned were those he claimed to have owned . . . . [T]he panel did not believe the artwork respondent lost was that which he described." *Id.* at 1065. "That this determination exceeded the appraisers' powers is beyond question." *Id.* The court further explained:

> In no authority is it suggested that an appraisal panel is empowered to determine whether an insured lost what he claimed to have lost or something different.
>
> When an insurer disputes an insured's description in identification of the lost or destroyed property, it necessarily claims the insured misrepresented -- whether innocently or intentionally -- the character of the loss in filing a proof of loss. In turn, this claim opens the door to allegations of fraud. Were an insurer permitted to include the former issue within the scope of an appraisal, a determination in the insurer's favor would foreclose a court from determining one essential element of fraud in any subsequent litigation. Certainly, an insurer is free to litigate whether the insured has misrepresented what he lost; but it is beyond the scope of an appraisal. Petitioner repeatedly confuses the question of identity of the property with those questions relating to value, e.g., quality or condition.

*Id.* at 1065-66.

Applying the principles laid out in *Sharma*, the court in *Kacha v. Allstate Insurance Co.*, 140 Cal. App. 4th 1023 (Cal. Ct. App. 2006), addressed whether an appraisal panel exceeded its authority in determining the amount of fire damage caused to the insured's home.[3] The court concluded that it had, stating: "It is apparent that the appraisal panel made at least some coverage determinations, thereby exceeding its authority." *Id.* at 1036. The court based this conclusion on the fact that "the panel awarded zero for items that had suffered damage from some source." *Id.* at 1035. For example, the composite decking outside the house was clearly damaged. The insurer, however, claimed that the

---

[2]As in this case, the appraisal clause in *Sharma* was based on the mandatory language of Insurance Code section 2071. *See id.* at 1065.

[3]The appraisal clause in *Kacha*, like that in *Sharma* and in the instant case, was based on the mandatory language for fire insurance policies mandated by California Insurance Code section 2071. *See id.* at 1033.

4

1 damage was "caused by improperly set and unsecured joists," and was "not related to the fire." *Id.* at 2 1036. The appraisal panel awarded $0 for the damaged decking. Similarly, the parties agreed that the 3 custom-made front door was damaged. The insurer agreed that the door would require at least $8,436.96 4 to fix, but contended that the damage was caused by sunlight, or some other source besides the fire. *Id.* 5 at 1036. The appraisal panel awarded $0. Based on these example, the court found that the appraisal 6 panel had exceeded its authority, and made coverage determinations, rather than just damage 7 determinations. In other words, "it rejected coverage for damaged items on causation grounds." *Id.* at 8 1035.

9 Here, defendants seek to have an appraisal panel make determinations similar to those made by 10 the panels in *Sharma* and *Kacha*. Defendants propose that an appraisal panel determine the amount of 11 loss suffered by plaintiff as a result of business interruption caused by the burglary. The parties dispute 12 the length of time for which plaintiff's business was interrupted, as defined by their insurance contract. 13 The business interruption clause of the parties' insurance contract provides, in pertinent part: "We will 14 pay the actual loss of 'business income' you sustain due to the necessary suspension of your 'operations' 15 during the 'period of restoration.'[4] The suspension must be *caused by* direct physical loss to Property 16 . . . and *result from* any Covered Cause of Loss." Calub Decl., Ex. A, at 9 (emphasis added).

17 By the explicit terms of the contract, therefore, the appraisal panel must determine whether 18 plaintiff's alleged business interruption was "caused" by the "covered cause." This is the precise 19 inquiry that the court found impermissible in *Kacha*. *See* 140 Cal. App. 4th at 1035. In *Kacha* the 20 "covered cause" was the fire; here, it is the burglary. In *Kacha*, the panel did not have authority to 21 determine whether the damage to the door was caused by fire, or by the sun. *See id.* at 1036. Similarly 22 here, the panel would not have authority to determine whether the interruption to plaintiff's business 23 from week three to week eight was caused by the burglary, or by plaintiff's own delay. The appraisal 24 panel's role is only to determine the monetary value of the interruption to plaintiff's business. The 25 panel's role is not to determine whether the policy covers that interruption.

---

[4]The contract defines "period of restoration" as ending "on the earlier of (1) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." *Id.* at 35.

5

*Sharma* also supports the Court's conclusion here. As in *Sharma*, asking the appraisal panel to determine the length of time for which plaintiff's business was interrupted, would be asking the panel "to determine whether an insured lost what he claimed to have lost or something different." 160 Cal. App. 3d at 1065-66. Plaintiff claims it lost eight weeks of business; defendants claim plaintiff lost only two. The dispute is one which an appraisal panel cannot decide. *See id.*

In support of their petition, defendants cite an analogous case from the Southern District of New York, in which the court mandated appraisal to determine the length of a business interruption. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235 (S.D.N.Y. 2003). This Court agrees that *Duane Reade* is on point. It is not controlling, however, because it relies on New York state law. California law – namely *Sharma* and *Kacha* – controls this Court's decision here.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to compel appraisal. Denial of this motion is without prejudice to renewal by either party, should they find a dispute suitable for resolution by an appraisal panel.

**IT IS SO ORDERED.**

Dated: May 15 , 2007

SUSAN ILLSTON
United States District Judge